**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION**

| | |
|---|---|
| LIZAJEAN HOLT, DONNA LEFEBVRE, ) | |
| DEBRA LEROY, and KIM LEONARD, ) | |
|    Individually, and on behalf of similarly ) | |
|      situated persons, ) | No. 3:-07-cv-94 |
|         Plaintiffs, ) | Phillips/Shirley |
| v. ) | Class action |
| ) | |
| MENU FOODS, INC., ) | JURY DEMAND |
|         Defendant. ) | CLASS ACTION |

**AMENDED CLASS ACTION COMPLAINT**

**I. Class Action**

    1. Plaintiffs, pursuant to Rule 15 of the Federal Rules of Civil Procedure, individually and as representatives of a Class of similarly situated persons more defined below, bring this amended suit against the named Defendant for offering for sale and **selling** to Plaintiffs and Class members pet food and food products – "cut and gravy" pet products – formally **recalled** on March 16, 2007. Defendant is a corporation doing business and operating in the United States. Defendant recalled cat and dog food products that are sold under numerous brands by several national chain stores in Tennessee, Texas, Ohio, Maine and other States in the United States. The pet food products were produced by Defendant(s), a private label manufacturer, labeled by the Defendant, and then distributed and ultimately sold to Plaintiffs, Class Members, and others. Defendant issued or caused to be issued a press release announcing the recall, and the United States Food and Drug Administration issued a press release the same day. These pet food products were intended to be placed in the stream of commerce and

distributed and offered for sale and sold to Plaintiff and purchasers in Tennessee and the United States and fed to their pets, cats and dogs.

## II. Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and subsection (d), and the Class Action Fairness Act of 2005, Pub. L.109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391 and/or Pub. L.109-2 because a part or substantial part of the events or omissions giving rise to the claim occurred in this judicial district, or a substantial part of property that is the subject of the action is situated in this judicial district.

4. In this judicial district, Plaintiff, Liza Jean Holt, purchased the recalled pet food product made by or for Defendant, and her pet ate or consumed it. Thousands of other consumers/customers – including the other named Plaintiffs and other Class Members – purchased the recalled or contaminated products in this and other judicial districts from retailers that Defendant, its agents, affiliates, or others it or they controlled sold or made available to them. In turn, retailers or others sold these recalled products to the general public, including Plaintiffs, Class members and other purchasers. These products were purchased for consumption by the pets of Plaintiffs and the Class members. Defendant made or caused these products to be offered for sale and sold to the public, including Plaintiff.

5. Rule 23 of the Federal Rules of Civil Procedure applies to class actions as well.

## III. Plaintiff s and their Purchases and Defendant's Recall

6. At all times material hereto, Plaintiff, Lizajean Holt, was and is a citizen of the State of Tennessee and the United States and resides in Knox County, Tennessee.

7. Ms. Holt purchased recalled brands of Pet Pride and Iams pet food from a national chain grocery store, Kroger, operating in Knox County, Tennessee. Kroger, like other retailers, did not alter the product produced by the Defendant in any way prior to selling it to Tennessee consumers and other consumers throughout the United States.

8. Without knowing that Defendants would recall the product after it was offered for sale and sold to her, Plaintiff purchased and fed the product(s) to her cat, her pet. Her pet became lethargic and began drinking large amounts of water and Plaintiff discontinued feeding the Defendant's products to her cat prior to the recall notice.

9. After learning of the recall, Plaintiff and thousands of other consumers took their pets to be evaluated or treated for kidney damage. Ms. Holt's pet, Kittygirl, remained at the veterinary facility for three days of treatment and Ms. Holt incurred and paid a bill of $279.80.

10. Plaintiff, Donna Lefebvre is a resident of the state of Maine and purchased Old Roy dog food (of a type that was later recalled by the Defendant) at a WalMart store in Biddleford, Maine.

11. After feeding the product manufactured by the Defendant to her dog, Gypsy, the dog became ill and was treated by a veterinarian on March 5th, 19th, and 22nd.

12. Gypsy died as a result of eating Defendant's contaminated dog food and Ms. Lefebvre incurred veterinarian and other associated bills of $591.50.

13.     Plaintiff, Debra Leroy, is a resident of Garland, Texas.  Ms. Leroy purchased ine of the brands of cat food manufactured and later recalled by the Defendant and fed it to her cat, Johnnie.

14.     Ms. Leroy's cat became ill and was treated by a licensed veterinarian, E.S. Henson, on January 26 and February 1, 2007.  Despite receiving I.V. treatments Johnnie died.  Ms. Leroy incurred veterinary bills of $166.00 as a result of Defendant's placing contaminated pet food in the stream of commerce.

15.     Plaintiff, Kim Leonard is a resident of Marblehead, Ohio.  She purchased contaminated pet food manufactured by the Defendant from a WalMart store and fed it to her six year-old cat.  Her pet became ill and has had to be treated over a prolonged period by a veterinarian at the veterinary facility.

16.  Before their purchases, Defendant never warned Plaintiffs or class members that the pet food product they purchased for feeding their pets may or would cause health problems or concerns or that they would have to take their pets to a veterinarian due to a health concern relating to or resulting from the tainted pet food.

17.  On or on about March 16, 2007, Defendant issued a recall for certain pet food for cats and dogs that it manufactured in plants that it controlled, owned, operated, or managed in the United States and later, expanded that recall.

18.  Defendant's business consists substantially of providing private label pet foods at its plants or pet foods under other brands, not its own.  In turn, Defendant's products are sold under a variety of labels or brands listed on its website as of March 17, 2007 and set forth below.

19.  The products that Plaintiffs purchased were recalled by Defendant.

20. After Plaintiffs and class members purchased the pet food and fed it to their pets, they learned about the recall and the actual or potential problems and concerns from purchasing and feeding the product to their pets.

21. Plaintiffs bought the product(s) for their intended purposes: to feed to their pets.

22. Defendant placed these pet products in the stream of commerce in Tennessee, Maine, Ohio, Texas, and elsewhere expecting that consumers such as Plaintiffs, the Class members, and the general public would feed these products to their pets.

**IV. Defendant, Its Business, and the Recall**

23. At all times material hereto, Defendant Menu Foods, Inc. was and is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110. Defendant is ultimately owned or controlled by Menu Foods Income Group, an Ontario based legal entity. Some of Defendant's high managerial or officers or agents with substantial authority are also high managerial officers or agents of Menu Foods Income Group. Defendant may be served through the Secretary of State for Tennessee or as provided by law.

24. Defendant, Menu Foods, Inc. owns, controls, is related to or an affiliate of a firm with plants where the pet food is manufactured or processed that are located in the United States. These plants are located in Emporia, Kansas and, Pennsauken, New Jersey, the place of manufacture where the pet products were recalled, and/or at other locations in the United States.

25. Defendant is the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger, PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food products to or for Proctor & Gamble, Inc. It produces hundreds of millions of containers of pet food annually.

26. Defendant has manufactured or produced pet food for private labels for about 17 of the 20 leading retailers in the United States.

27. Defendant's business includes manufacturing, producing, distributing, or selling cat food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Wynn Dixie.

28. Defendant's business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion, Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max,

6

Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride – Good & Meaty, President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot, Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Wynn Dixie, and Your Pet.

29. On Defendant's website as of March 17, 2007, it listed by brands, the size of the container or pouch, the dates of manufacture, and the products subject to recall. Thus, each container or pouch and size of each brand or label listed – subject to the recall above – was noted specifically on its web site. Thus, a 3 ounce can or pouch of Pet Pride Pouch Mixed Grill 24 X 3 with sale by date of March 8, 2009, with a specified "UPC" number was one of about 150 separate Pet Pride labeled cat food that Defendant recalled. The other brands also generally listed numerous separate pouches or containers bearing the major private label or brand with a further sub-description similar to the manner described above, by brand or label.

30. After reports or complaints from pet owners about symptoms – such as vomiting or lethargy – suggesting kidney failure in their dogs and cats and/or after reports of deaths of certain pets, from or through its Canadian office or affiliation, Defendant caused or issued a recall of certain specified pet products, reportedly totaling between 40 and 60 million cans.

31. Defendant also advised a governmental agency of the United States about the recall and certain events leading to the recall, namely the Food and Drug Administration (FDA).

32. Defendant produces over 1,000,000,000 pouches or containers of pet food products each year, a substantial portion of which is sold or offered for sale in Tennessee,

Ohio, Maine, Texas and other states for residents who purchase the products for their pets. Many consumers who fear for the health of their pets will no longer have the product because it has been fed to the pets or discarded.

33. Defendant knows or should know that national, regional, and/or local distributors will distribute these finished pet food products that it manufactures or processes to retailers to offer them for sale in Tennessee, Ohio, Texas, Maine and other states and to the consumers who purchase and buy them for their pets for consumption by their pets in this and virtually every other judicial district.

34. Defendant knows or understands that millions or tens of millions of cans or pouches of the pet food products that it manufactures or produces will be advertised, promoted, and sold in the United States and in this judicial district, including a significant or substantial part of the recalled pet food.

35. Defendant knows or understands that the promotion and advertising of pet food produced at its plants in part targets consumers and customers in Knox County, in this judicial district, in the State of Tennessee, regionally, or nationally.

36. Defendant makes or produces the pet food products in its plants with a purpose or design that consumers and customers will purchase them, regardless of brand or label name, place of purchase, or place where pets actually consume them.

37. Defendant makes or produces for third parties well-known, lesser known, and/or premium or discount brands or labels of pet foods and knows that customers and consumers will ultimately purchase them to feed to their pets.

38.  Defendant desires that consumers and others who purchase or consider purchasing a pet food product made or produced in one of its plants, by whatever label or brand, believe that the pet food product is safe for their pets to eat.

39.  Defendant has recalled specified pet food products that consumers and customers purchased from a time beginning about December 3, 2006.

40.  Class members and others have purchased the pet products that were recalled across the United States, in Tennessee, and in this judicial district.

41.  Class members and others who purchased or fed Defendant's products to their pets did so in this judicial district, in Tennessee, and in the United States.

42.  Some class members or others have already taken their pets to a veterinarian for treatment or diagnosis related to their pets eating the recalled pet food and more will do so as word of the recall spreads. For instance, the Knoxville NewsSentinel carried a prominent story about the recall and the potential dangers to the pets of East Tennessee citizens in its Sunday, March 18, 2007 edition and, as of April 6, 2007 the story of Defendant's recall remains a featured story on virtually every major news outlet.

43.  Class members have suffered and will suffer injuries, losses, or damage as a result of the recall and/or feeding their animals the food that was recalled.

44.  There have been other reported incidents of pet food being recalled as a result of possible or actual concerns or problems with the pet food and its or their effects on pets.  Defendant knew or should have known about the risks and possible injury.

45.  The source of the contamination is purported to be an agricultural product imported from China.

46. China is generally known for having lax regulations in comparison to United States and Canadian regulations and Defendant should have taken extra precautions before using products imported from China in its pet foods.

**V. Plaintiff, Class Members, and Others' Losses, Damages, and Injuries**

47. As a result of their purchases of the pet food recalled or subject to recall, set forth above, Plaintiff, Class members, and others have suffered and will suffer a loss, damage, injury, and sustained damages, including consequential and incidental damages, such as costs of purchasing the contaminated food product and replacing it with a safe food product, including sales tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by Defendant, the cost of veterinarians, treatment, medicines, and the trip(s) to make such visits for diagnosis and treatment, and otherwise, and the cost of replacing deceased pets. In addition, some states, including Tennessee, permit recovery for damages such as mental anguish and loss of companionship.

**VI. Breach of Warranties & Remedies**

48. Defendant breached express warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

49. Defendant breached implied warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

50. Defendant breached the implied warranty of fitness for a particular purpose by claiming certain of the pet food that it manufactured or produced and was recalled were fit and safe for consumption by pets and thereby violated the Uniform Commercial Code.

51. Defendant breached the implied warranty of merchantability. In fact, the pet food subject to recall and purchased or used by Plaintiff, the Class, and others was not merchantable. This breach violated the Uniform Commercial Code.

52. Plaintiffs are entitled to the remedies for breach authorized by the Uniform Commercial Code and other law.

**VII. Negligence**

53. Defendant owed Plaintiffs and the Class a duty to only offer safe, non-contaminated products for consumption by pets and offered for sale and sold in the stream of commerce.

54. Though its failure to exercise due care Defendant owed Plaintiffs, the class, and others, Defendant was negligent in producing, processing, manufacturing, and offering for sale the recalled pet food and pet food products it offered for sale and sold to Plaintiff, the class, and others.

55. Defendant failed to use sufficient quality control, to do adequate testing, to perform proper manufacturing, production, or processing, or failed to take sufficient measures to prevent the pet food products that were recalled from being offered for sale, sold, or fed to pets.

56. Defendant knew or should have known that the pet food that was recalled presented an unacceptable risk to the pets of the Plaintiffs, the Class, and others and would result in damage that was foreseeable and reasonably avoidable.

57. The loss, damage, and injuries were foreseeable.

58. Defendant's negligence proximately caused the loss, damage, injury, and damages to Plaintiff, the Class, and others.

**VIII. Statutory Unfair or Deceptive Trade Practices Act**

59. Plaintiffs and other class members ar persons within the meaning of consumer protection laws of the various states, including, but not limited to, Tenn. Code Ann. §47-18-103.

60. Defendant's offer for sale or sale of the recalled pet food products is in or affects trade or commerce in Tennessee and other states.

61. Defendant impliedly represented to the public, Plaintiff, the Class and others that its pet food products were safe for consumption by their pets and could be safely purchased.

62. In fact, Defendant recalled or caused to be recalled millions of containers or pouches of pet food because it risked the health and well-being of consumers, customers, Plaintiff, purchasers, the Class, and others.

63. Defendant violated Tenn. Code Ann. §47-18-104 (a) and sub-parts of (b) by placing these unsafe pet food products in the stream of commerce in Tennessee.

64. Each Plaintiff, Class member, and other person adversely affected in Tennessee has suffered an ascertainable loss of money or property due to a violation of the Tennessee Consumer Protection Act and other consumer protection laws in the various states.

65. Plaintiffs bring a claim for a violation of consumer protection laws including the Tennessee Consumer Protection Act under Tenn. Code Ann. §47-18-109, for ascertainable loss of money or property by each such person.

**IX.   Statutory Damages for Losses to Pets in Tennessee**

66. Pursuant to T.C.A. § 44-17-103, certain class members are or may become entitled to non-economic losses including loss of society, companionship, love and affection due to her pet's injuries and the suffering resulting thereof.  Plaintiffs' pets were kept or maintained as pets in their household and property.

## IX.  Rule 23

67.  Plaintiffs ask this Court to certify the following Class:

All persons in the United States who purchased or fed his, her, or their cat(s) or dog(s) pet food produced or manufactured by Defendant that was or will be recalled by the Defendant, including that produced from December 3, 2006.

68.  Plaintiffs are members of the Class, sue as representative parties on behalf of all, and avers that the class is so numerous that joinder of all members is impracticable.

69.  There are questions of law or fact common to the Class.  These common questions include but are not limited to the following:

a. Whether Defendant sold pet food products that were recalled or subject to a recall?

b. Whether Defendant advertised, represented, or held itself out as producing or manufacturing a pet food product that was safe for pets of the class members?

c. Whether Defendant expressly warranted these products?

d. Whether Defendant impliedly warranted these products for fitness for a particular purpose?

e. Whether Defendant impliedly warranted these products for merchantability?

f. Whether Defendant purported to disclaim any express warranty?

g. Whether Defendant purported to disclaim any implied warranty?

h. Whether any limitation on warranty fails to meet its essential purpose?

i. Whether Defendant intended that the pet food products be purchased by Plaintiff, Class members, or others?

j. Whether Defendant intended or foresaw that Plaintiff, class members, or others would feed their pet food products to their pets?

k. Whether Defendant recalled the pet food products?

l. Whether Defendant was negligent in manufacturing or processing the pet food products?

m Whether using the products as intended – to feed their pets – resulted in loss, injury, damage, or damages to the Class?

n. Whether Defendant's negligence proximately caused loss or injury to damages?

o. Whether Class members suffered direct losses or damages?

p. Whether Class members suffered indirect losses or damages?

q. Whether Defendant's acts or practices violated state Deceptive Trade Practices Acts or Consumer Protection Acts?

r.  Whether Defendant should have taken extra precautions before adding ingredients imported from countries with lax or no food regulations to its pet food products.

70.  The claims or defenses of the representative parties are typical of the claims or defenses of the Class.

71.  The representative parties will fairly and adequately protect the interests of the Class.

72.  Prosecuting separate actions by individual members of the Class would create a risk of either –

      a. Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants, the parties who oppose the class, or

      b. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

      c. Few, if any, Class members have an interest in individually controlling the prosecution of separate actions;

      d. Plaintiff, Liza Jean Holt, was unaware of any litigation concerning the controversy already commenced by members of the class prior to filing the orignal complaint;

      e. It is desirable to concentrate the litigation of the claims in this forum;

      f. No unusual difficulties are likely to be encountered in the management of a class action.

      73.  The undersigned Attorneys for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis.

      74.  They will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

75. Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

**XI. Jury Demand**

76. The Class demands a jury trial on all issues triable by a jury.

**XII. Prayer for Relief**

Wherefore, premises considered, Plaintiff prays that the Court grant the following relief:

1. That process issue and Defendant be served. (Plaintiff's counsel will first provide Defendant's agent, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, NJ 08628 with a Notice of Lawsuit by mail pursuant to the Federal Rules)

2. That as soon as practical, the Court certify a Class, defined herein, or modified as appropriate under the facts and law.

3. That the Court find that Plaintiff has satisfied Rule 23's and federal law's requirements for certifying a Class.

4. That the Court find that Defendant manufactured or processed the pet food products that were sold or offered to sale to Plaintiff and the Class.

5. That the Court find that Defendant intended Plaintiff and Class members to believe that the pet foods sold were fit and safe for consumption by their pets.

6. That a trial be held and Defendants be held liable to the Class for – breach of warranty, negligence, and under state statutes prohibiting deceptive trade practices.

7. That the Class be awarded an amount sufficient for direct damages occasioned by Defendant's acts and practices.

8. That the Class be awarded an amount sufficient for indirect, consequential, and incidental damages occasioned by Defendant's acts and practices.

9. That the Class be awarded treble damages or special damages authorized by state statutes prohibiting deceptive trade practices, depending upon the State where the Class Member lives.

10. That the Court award reasonable attorney's fees and costs and expenses recoverable under law.

11. That the Court order such other, further relief as the case requires and justice demands.

Dated:  April 6, 2007.

Respectfully submitted,

/s/ A. James Andrews_____
A. James Andrews, BPR # 15772
905 Locust Street
Knoxville, Tennessee 37902
(865) 660-3993
Fax: (865) 523-4623

/s/Perry A. Craft_____
Perry A. Craft, BPR # 6057
Craft & Sheppard, PLC
The Shiloh Building
214 Centerview Drive
Suite 233
Brentwood, Tennessee 37027
(615) 309-1707
(615) 309-1717 (fax)

                                              /s/<u>Nichole Bass</u>_____
                                              Nicole Bass, BPR # 021383
                                              905 Locust Street
                                              Knoxville, Tennessee 37902
                                              (865) 310-6804

                                  Cost Bond

We are sureties for costs not to exceed $1,000.

                                              <u>/s/ A. James Andrews</u>